## SARAH O. HANNA *et al.*

*v.*

## SUSANNAH M. READ *et al.*

*Filed at Ottawa March 28, 1882.*

1. FORMER ADJUDICATION—*how far conclusive.* A decree of a court of competent jurisdiction in the State of Indiana, finding that a deceased grantor of lands was, at the time of making a conveyance of lands in that State, insane, and incapable of doing business, and setting such conveyance to his wife aside, is not only competent evidence to establish the fact of the grantor's insanity, in a suit between substantially the same parties, to avoid a conveyance of lands in this State, made by the same grantor and at the same time the deed was made to the Indiana lands, to a trustee, who immediately conveyed to the grantor's wife, but when properly pleaded and relied on, is conclusive upon the defendants in the latter suit, as to that fact.

2. When the former adjudication is relied on as an answer and bar to the whole cause of action, or, in other words, when it is claimed to be an answer to all the questions involved in the subsequent action, then it must appear that the cause of action and thing sought to be recovered are the same in both

Brief for the Plaintiffs in Error.

suits.  The former adjudication in such case is known as an estoppel by judgment, and the judgment itself is a bar to the action.

3.  But when some specific fact òr question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not.  This is known as an estoppel by verdict, and is equally available to a plaintiff in support of his action, when the circumstances warrant it, as when offered by a defendant as matter of defence.

| 102 | 596 |
|---|---|
| 199 | [1]376 |
| 102 | 596 |
| 203 | [1]603 |
| 102 | 596 |
| e211 | [2]294 |
| 112a | [3] 7 |
| 102 | 596 |
| 212 | [3]465 |

4.  SAME—*as to identity of parties.*  It is sufficient to make a former adjudication as to any material fact determined, an estoppel, that the parties be substantially the same.  The fact that in the second suit one is made a party who was not a party in the first action, will not defeat the application of the rule of estoppel when such person is a mere formal party, having no interests that can be affected.

5.  JUDGMENT—*can not be attacked collaterally.*  The force and effect of a decree of a sister State, when set up as an estoppel to deny a fact necessarily found by it, can not be avoided by showing that the defendant in such former suit, and against whom the finding is offered, was insane at the time such proceedings were had therein.  The effect of such decree can be obviated only by a direct proceeding in the courts of such State to impeach or set it aside.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Messrs. WALKER & CARTER, for the plaintiffs in error:

The judgment of a court of a sister State is entitled to the same force and effect as in the State where it was rendered.  Sec. 1, art. 4, Constitution of United States; *Mills* v. *Duryee*, 7 Cranch, 481; *Andrews* v. *Montgomery et al.* 19 Johns. 162; *Baker* v. *Palmer*, 83 Ill. 568.

Every judgment is conclusive between parties and privies as to such facts in issue upon which a judgment is, on its face, conditioned, as were actually decided by the court.  Freeman on Judgments, sec. 252.

That a decision upon any material point is conclusive, though the subject matter of the two suits be different: Freeman on Judgments, sec. 253; *Spencer* v. *Dearth*, 43 Vt.

98; *Betts* v. *Starr*, 5 Conn. 550; *Doty* v. *Brown*, 4 N. Y. 71; *Williams* v. *Fitzhugh*, 44 Barb. 321; *Walker* v. *Chase*, 53 Me. 258; *Davis* v. *Brown*, 4 Otto, 423.

A judgment is conclusive not only as to the subject matter in suit, but as to all other suits, which, though concerning other subject matter, involve the questions in controversy. Freeman on Judgments, sec. 253; *Gardner* v. *Buckbee*, 3 Cow. 120; *Bouchaud* v. *Dias*, 3 Denio, 238.; *Babcock* v. *Campbell*, 12 Ohio St. 11; *Sawyer* v. *Woodbury*, 7 Gray, 449; *Merriam* v. *Whittemore*, 5 id. 316; *Caperton* v. *Schmidt*, 26 Cal. 479; *Eastman* v. *Cooper*, 15 Pick. 276; *Sage* v. *McAlpin*, 11 Cush. 165; *Beloit* v. *Morgan*, 7 Wall. 619; *San Antonio* v. *Lane*, 32 Tex. 411.

If the same evidence will support both actions, a judgment in the one is conclusive upon the same issue in the second suit, though the cause of action be different. *Doty* v. *Brown*, 4 Comst. (N. Y.) 71; *Taylor* v. *Castle*, 42 Cal. 371; *Cannon* v. *Brame*, 45 Ala. 262; *Percy* v. *Foote*, 36 Conn. 102; *Gunn* v. *Howell*, 27 Ala. 663.

As to the effect which the courts in Indiana would give the judgment offered and excluded, see 24 Ind. 156; 57 id. 56; 1 Blackf. 360; 55 Ind. 584; 51 id. 329; 46 id. 350; 45 id. 489.

As to the question how far the contravening or subsisting insanity of a judgment defendant affects the judgment when it comes up collaterally, we assert that it does not affect it at all, and cite Freeman on Judgments, sec. 152; 63 Pa. St. 320; 50 Md. 214; 1 Gill, (Md.) 347; 31 Ohio St. 247.

Messrs. WILSON, MARTIN & COOK, for the defendants in error:

To make a matter decided *res judicata*, there must be a concurrence of the following four conditions: Identity in the thing sued for, identity in the cause of action, and identity of persons and of parties. Bouvier's Law Dic. 467; *Miller*

v. *McMannis*, 57 Ill. 126; *Gray* v. *Gillilan*, 15 id. 456; *Van Alstyne* v. *Ind., Pitts. and Cleav. R. R. Co.* 34 Barb. 28; *Mersereau* v. *Pearsall*, 19 N. Y. 108.

A former decree is neither conclusive nor admissible, unless both suits are between the same parties. 1 Greenleaf on Evidence, secs. 522, 524; *Maule* v. *Brice* 2 C. P. Cooper, (Temp. Cott.) 215; *Baring* v. *Fanning*, 1 Paine, 549; *Duchess of Kingston's case*, 20 How. St. Trials, 369; *Thomas' Trustees* v. *Brashear*, 4 T. B. Mon. 65; *Owings* v. *Hull;* 9 Pet. 607; *Cates* v. *Woodson*, 2 Dana, 454.

The former case was not fairly tried on its merits. Where this happens from the sudden incapacity of the defendant, he is not concluded by the former judgment. 1 Greenleaf on Evidence, sec. 530.

It is competent to show the state of facts which existed on this point at the trial. *Cromwell* v. *Sac County*, 4 Otto, 356.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Ezra B. Read, on the 26th day of April, 1877, was the owner in fee of a large amount of real estate, situate in Vigo county, Indiana, where he then resided with his family. He was also, at the same time, the owner of other valuable real property in Chicago, this State, being the same now in controversy. On the day above mentioned, at his residence in Vigo county, he executed two deeds, embracing the whole of his estate, by one of which he conveyed directly to his wife, Susannah M. Read, the Indiana lands, and by the other, under the advice of counsel, he conveyed the Chicago property to Marvin M. Hickox, who thereupon, in pursuance of a previous understanding between the parties to that effect, conveyed the same property to Read's wife, so that by means of the three deeds she became clothed with the apparent legal title to all her husband's lands.

On the 10th of the following month Read died intestate, leaving the said Susannah M. Read, his widow, and Sarah

O. Hanna, Jonathan T., Kenton C., Broady, and Parke Read, his children and only heirs at law. The first three of the children above mentioned were by his first wife, and the other two, Broady and Parke, by his second wife. Shortly after the death of Read his children by his first wife, the present plaintiffs in error, commenced a suit in the circuit court of Vigo county, against the widow and her two children, Broady and Parke, for the purpose of having Read's deed to his wife of the Indiana lands set aside and canceled, on the alleged ground that at the time of making the conveyances above mentioned he was insane, and on the further ground that said conveyances were obtained through the fraud and undue influence of the grantee.

The defendants, having been duly served with process, appeared in court, and by their answer distinctly denied the charges of insanity and undue influence, and upon the issues thus formed the cause was heard and determined upon the merits at the November term, 1877, of the Vigo county circuit court, resulting in a judgment and decree setting aside the deed to the Indiana lands. As a basis of that decree the court specifically found that Ezra B. Read executed the deed because of the undue influence and fraudulent conduct of the said Susannah M. Read, and that at the time he so executed these deeds, on the 26th of April, 1877, "*he was of unsound mind, and incapable of making said instruments.*" The decree and specific findings of the circuit court of Vigo county are still in full force and effect.

Plaintiffs in error, assuming the adjudication in the Indiana court was conclusive upon the question of Read's mental condition at the time of making the deeds in question, filed the present bill against the defendants in error, alleging, as was done in the former case, the insanity of Read and the undue influence and fraud of his wife, and also setting up the proceedings in the Vigo county circuit court, including the decree and findings in said cause as heretofore stated,

and relied upon the transcript of the record of that case as evidence to sustain the bill in the present case. The circuit court, however, refused to admit the transcript in evidence, and plaintiffs in error not offering any other or further evidence with respect to the insanity of Reed or the undue influence and fraud of his wife, the court entered a decree dismissing the bill, to reverse which the complainants in the bill bring the case to this court by writ of error.

The immediate question presented by the record for our determination is, whether the court below erred in excluding from its consideration as evidence the transcript of the proceedings in the Vigo county circuit court, and the solution of this question of course depends upon what, if any, effect must be given to the record of those proceedings as an instrument of evidence in the present suit for the purpose of establishing the alleged insanity of Read, or the fraud and undue influence of his wife. Since the proof of either of these facts would fully warrant the relief sought by the bill,—and it is clear if the record be competent evidence to establish the one, it is the other,—it will only be necessary to consider the question so far as it relates to the mental capacity of Read at the time of executing the deeds.

On the one hand, it is insisted by defendants in error that all the conditions essential to the admissibility of such evidence are wanting,—that there is neither identity in the thing sued for, in the cause of action, nor of the parties in the two actions, and hence they conclude the evidence was properly excluded. On the other hand, plaintiffs in error maintain that in the former suit the mental capacity of Read at the time of the execution of these deeds was directly put in issue by the pleadings, fully considered, and expressly determined by the court, as appears from the pleadings and decree in that cause; that within the meaning of the law relating to a, former adjudication, when operating as an estoppel, the parties to the present and former actions are the same, and

hence, although there is a want of identity in the thing sought to be recovered and the cause of action in the two suits, the record of the decree in the former suit, which specifically finds that Read at the time in question was insane and incapable of making a conveyance, was not only competent evidence to establish that fact in the present suit, but was absolutely conclusive of it,—and in this position we are of opinion plaintiffs in error are sustained by the decided weight of authority.

The contention of defendants in error that before an adjudication in a former suit can be made available as an estoppel, it must appear that the thing sought to be recovered and the cause of action in both suits are the same, is not universally true. A careful examination of the subject will show there is a diversity in the cases in this respect which, if kept in view, will satisfactorily explain what would otherwise appear to be irreconcilable statements of different courts of the highest respectability in discussing the law of estoppel by judgment or verdict. Where the former adjudication is relied on as an answer and bar to the whole cause of action, or, in other words, where it is claimed to be an answer to all the questions involved in the subsequent action, then it must appear, as claimed by defendants in error, that the cause of action and thing sought to be recovered are the same in both suits. The former adjudication in cases of this class is technically known as an estoppel by judgment, and the judgment itself is commonly characterized as a bar to the action; but where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not. This species of estoppel is known to the law as an estoppel by verdict, and

is equally available to a plaintiff in support of his action, when the circumstances warrant it, as when offered by a defendant as matter of defence. The estoppel relied on in the present case clearly belongs to the class last considered, so it is unimportant whether the cause of action is the same in both cases or not. Although there is the diversity in the two classes of cases we have mentioned, it is apprehended there is no material difference in the principles by which they are governed.

Whether the adjudication relied on as an estoppel goes to a single question, or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication. The foregoing view of the law on this subject is believed to be fully sustained by the following authorities: *Betts* v. *Starr*, 5 Conn. 550; *Parker* v. *Standish*, 3 Pick. 288; *Van Rensselaer* v. *Akin*, 22 Wend. 549; *Aurora City* v. *West*, 7 Wall. 82; *Young* v. *Black*, 7 Cranch, 565; *Miller* v. *Maurice*, 6 Hill. 114; *White* v. *Coatsworth*, 2 Selden, 137; *Eastman* v. *Cooper*, 15 Pick. 276; *Gardner* v. *Buckbee*, 3 Cow. 120; *Bouchaud* v. *Dias*, 3 Den. 243; *Hayes* v. *Gudy-kunst*, 1 Jones, 221; *Cromwell* v. *County of Sac*, 94 U. S. (4 Otto,) 526; *Davis* v. *Brown*, id. 423; *Duchess of Kingston's case*, 2 Smith's L. C. 424; *Outram* v. *Moorewood*, 3 East, 346; *Moonott* v. *Hampton*, 7 T. R. 269; *Arlin* v. *Parkin*, 2 Burr. 665.

It is not denied that the decree and findings in the Indiana case conclusively establish the insanity of Read at the time of making the conveyance to the Indiana lands, but it

is suggested that notwithstanding the evidence conclusively shows that the making of the deed to the Illinois land was at the same time, and that the execution of these conveyances constituted one and the same transaction, still, of necessity, there must have been a moment of time intervening between the execution of the two deeds, and hence' it is maintained we can only arrive at the conclusion the grantor was insane at the time of making the deed to the Illinois land by mere argument or inference, which is not permitted in applying the doctrine of *res judicata.* We regard this position as too technical and refined for any practical purpose. To adopt it would be to lose sight of the real substance of the transaction, and to go in pursuit of its shadow. It would place the court in direct antagonism with a number of the cases above cited, and afford a striking illustration of what is known as "*sticking in the bark.*"

That the mental condition of Read at the time of making these deeds was put directly in issue by the pleadings, and expressly decided by the decree in the former suit, we think clear, beyond all doubt. Both deeds were made exhibits to the bill in that case, and in referring to these deeds it is expressly charged in the bill "that at the time of executing said deeds said Ezra B. Read was of insane mind, and said supposed deeds were not his deeds." This allegation was put directly in issue by the answer of the defendants, which was a general denial of all the allegations in the bill. Upon the issue thus formed, the cause was submitted to a jury, and was tried upon the merits. The jury returned a general verdict for the complainants, and thereupon the court, in pursuance of the verdict, entered a formal judgment, wherein it was adjudged and decreed, "that the matters and things alleged in the complaint, and each paragraph thereof, are true as therein alleged." One of these allegations thus found by the decree to be true, as we have just seen, is that Read, at the time of making these deeds, was of "insane mind."

It is thus clear, both from the pleadings and decree, that the insanity of Read was fixed, and conclusively established, at the time of making these deeds. Their execution being concurrent acts, and constituting but one transaction, his insanity could not, in the very nature of things, have been shown as to one deed without showing it as to the others also, and the mere fact that that court had no power to enter a decree directly affecting the title to the Chicago property, does not at all affect the conclusiveness of its finding as respects Read's insanity at the time of making these deeds.

It is further objected that the parties to the former and present suits are not the same. This objection we do not regard as tenable. It is sufficient for the purposes of the rule relating to a former adjudication, when relied on as an estoppel, that the parties be substantially the same, and so we regard them in the present case. *Thompson* v. *Roberts,* 24 How. 233; 7 Rob. Prac. 137; *Drake* v. *Perry,* 58 Ill. 122. In the case last cited, the holder of a note indorsed in blank brought an action upon it before a justice of the peace, in the name of the payee, for his use, in which a judgment was rendered for the defendant. The holder, without taking an appeal, subsequently withdrew the note from the justice, filled up the blank indorsement with his own name, and instituted another suit upon it in his name as indorsee, and it was held the judgment in the first action was a bar to the second. There, although the parties were nominally different, nevertheless the doctrine of *res judicata* was applied, on the ground the parties in interest were the same.

It is not important to determine whether Hickox is a necessary or even a proper party to the present suit. The utmost that can be claimed is, that he is a mere formal party, having no interests that can be affected by the result of the litigation, let it go as it may. In fact, by his answer he disclaims all interest in the subject matter of the suit, and shows, as is conceded, that he was used in the transac-

tion merely as one of the instrumentalities by which Read attempted to convey the Illinois lands to his wife. Had Read been of sound mind, Hickox would have subserved the purpose of a mere conduit, through which the title to the lands would have passed from him to his wife, and nothing more. The bill, in this case, seeks no relief whatever of Hickox, and if he has any possible interest in this question of estoppel, it is clearly, in the light of his own answer, in favor of sustaining the former adjudication. But, as before stated, we do not regard him as having any legal interest in the subject matter of this suit, or the vital question upon which it depends.

The further point is made, that even conceding the general current of authority upon the subject of estoppel, so far as it affects the present controversy, to be as we have stated, still it is claimed that under the decisions of Indiana the adjudication in question would not be conclusive of Read's insanity in a subsequent suit like the present, in that State. If this claim is justified by the actual decisions of that State, it must be confessed that it affords a conclusive answer to the chief ground upon which the present decree is assailed. The case mainly relied on in support of this position is *Roberts* v. *Robeson,* 27 Ind. 454, and it must be conceded that if that was the only evidence of the rule in that State upon the subject, the case would seem to justify the conclusion which defendants in error draw from it; but we regard that case not only unsound on principle, but as inconsistent with both the previous and subsequent decisions of the same court. *Reeves et al.* v. *Plough,* 46 Ind. 350; *Bates et al.* v. *Spooner et al.* 45 id. 489; *Pressler et al.* v. *Turner et al.* 57 id. 56; *Davenport* v. *Barnett,* 51 id. 329.

In the case last cited a junior mortgagee filed a complaint to foreclose, making a senior mortgagee a party, and alleging the latter had been paid the amount of his mortgage, but that, notwithstanding such payment, he was fraudulently

confederating with others to enforce payment again out of the mortgaged estate, for the purpose of defeating the claim of the complainant. The senior mortgagee made no defence to this action, and there was a decree or judgment *pro confesso* rendered against him. Subsequently the latter brought an action to foreclose his own mortgage, making the junior mortgagee a party, who set up, by way of defence, the adjudication in the former suit, and the decree in that case was held conclusive upon the question of payment of the senior mortgage. In that case it was urged, as it is in the one before us, that the doctrine of *res judicata* should not apply, for the reason the parties were not the same in the former as in the subsequent suit; but the objection did not prevail, and the court laid down the general rule, which is in perfect harmony with the current of authority on the subject, that "any of the parties to an action between whom issues have been formed and determined, may, in a subsequent action, where the same issues are tendered, plead a former adjudication as between them, although the parties to the different actions may not all be the same persons." It will be also perceived that neither the causes of action nor the objects of the two suits were the same. In the former suit the debt secured by the junior mortgage was the cause of action, and the object was to foreclose that mortgage by making it a prior and first lien. The object of the second suit was to enforce the older mortgage as a superior and subsisting lien on the mortgaged property, and the cause of action was the alleged existing debt secured by the older mortgage. Yet the question whether the first mortgage debt had been in fact paid was presented in both cases, and hence its determination in the former suit was conclusive of it in the latter. So in the case before us, while there is no unity in the causes of action or of the objects of the two suits, and only a partial unity as to the parties, yet, as in the cases just considered, the question whether Read, at the time of making the deeds

in question, was insane or not, was involved in both suits, and its determination in the first must be accepted as conclusive of it in the second, and this conclusion is fully sustained by *Davenport* v. *Barnett, supra.*

It is sought, also, in the present case, to avoid the effect of the Indiana decree, on the alleged ground that Mrs. Read herself was insane at the time these proceedings were had, and that by reason thereof a misunderstanding arose between her and her counsel, which resulted in preventing a fair trial on the merits. It is clear, on authority, such a defence can not be made available in a collateral proceeding like this. If what is claimed be true, doubtless an original bill of complaint would lie in the court where that decree was rendered, for the purpose of impeaching it, on the grounds stated, or there may be other means of redress afforded by the law of that State; yet we are aware of no principle that will sanction the attacking of a judgment or decree of a sister State for such cause in a mere collateral proceeding, as is sought to be done here. It is true a few cases may be found where this has been permitted, yet we do not regard them as sound in principle, and they are in direct conflict with the general current of authority on the subject. It is conceded that the circuit court of Vigo county had jurisdiction both of the parties to the suit and the subject matter of litigation, and such being the case, the decree there must be held conclusive on the parties until reversed or otherwise set aside by some direct proceeding for that purpose. It is not claimed or pretended that the decree could be thus collaterally attacked in the State where it was rendered, and to permit it to be done here would be to wholly disregard that provision of the national constitution, and the act of Congress carrying it into effect, which provide that the record of a judgment of a sister State, when properly authenticated, shall be entitled, when offered as evidence in another State, to the same faith and credit which it is entitled to in the State from which it

is taken. This, of course, is not permissible. This conclusiveness which is uniformly given to the judgments of a sister State, is now, by the weight of modern authority, extended to the judgments of foreign countries, and the rule has been fully recognized by. this court.

The decree of the circuit court is reversed, and the cause remanded. for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE SCOTT, dissenting:

The questions presented by this record are of unusual importance, and I therefore feel at liberty to state fully my views concerning them. The discussion of them by counsel presents a wide field for investigation. The decisions bearing on the questions discussed present a great contrariety of reasoning, and it must be admitted it is not always consistent. Much of what has been said by text writers and courts in their discussions, was no doubt induced in many instances by the peculiar equities of the cases under consideration. An analysis of all the cases to which the attention of the court has been directed, would involve no inconsiderable labor. Nothing more will be attempted than to state briefly the conclusions I have reached from a consideration of the numerous cases cited bearing directly or remotely on the questions involved.

Concerning many of the principal facts both parties agree. On the 26th day of April, 1877, Ezra Read, since deceased, then a resident of Vigo county, in the State of Indiana, during what proved to be his last illness, conveyed, for a nominal consideration, the real estate which is the subject of this litigation, and which is situated in Cook county, in this State, to Marvin M. Hickox. On the same day Hickox, for a like nominal consideration, conveyed and warranted to Susannah M. Read, wife of Ezra Read, the same property by the same

description. The conveyance to Hickox was made with a view to have him convey the same property to the wife of his grantor, and for no other purpose. It is also an admitted fact that on the same day the conveyances in this case were made, Ezra Read conveyed certain real estate, which he then owned in Vigo county, directly to his wife. The property so conveyed, directly and indirectly, to his wife, was of considerable value, and comprised nearly all the valuable property the grantor then owned. The transaction took place shortly before the death of the grantor.

A bill was filed in the proper court in Vigo county, in Indiana, to set aside the deed from Ezra Read to his wife, Susannah M. Read, for the real estate situated in that county. In that bill it was charged, in one paragraph, that for over a year before the making of the deeds, and at the time of making the same, defendant had and used great and extraordinary influence over the mind of her husband; that when such instruments were made he was old and infirm, and greatly enfeebled in body and mind, so as to be easily influenced and controlled by defendant, and was from such weakness of body and mind incapable of making a fair disposition of property, and by means of threats, persecutions and importunities, and by personal violence towards her husband, not only at the time of making such deeds, but for a long time prior, and by threats to burn and destroy his property, he was induced, by the undue and improper influence of defendant, to make and deliver to her the deeds for the property described in the bill. In another paragraph it is charged, the grantor, at the time of executing the deed, was of unsound mind, and for that reason the deeds were void. The bill in that case was filed by the present complainants, who are the children of Ezra Read by a former wife, except the husband of Sarah O. Hanna did not join with her in the suit, and was against Susannah M. Read, widow, and Broady and Parke Read, minor children of the same father by his surviving

wife.  The case seems to have been tried before the court
and a jury.  No particular fact was found,—the jury simply
returned they "find for the plaintiffs," without stating what
they found.  On the coming in of the verdict it was "ordered,
considered and adjudged by the court that the matters and
things alleged in the complaint, and in each paragraph
thereof, are true as therein alleged."  It was then further
adjudged and decreed that Ezra Read conveyed the real
estate described in the bill as being situated in Vigo county,
to defendant Margarette S. Read; that he executed such
conveyance because of the undue influence and fraudulent
conduct of defendant, and that when he so made and exe-
cuted such deed he was of unsound mind, and was from that
cause incapable of making and executing such an instru-
ment.

The bill in the case now before this court was filed in the
circuit court of Cook county, in which county the property in
controversy is situated, by the same complainants as in the bill
in the State court of Indiana, except the husband of Sarah O.
Hanna is joined with her as a co-complainant, and is against
the same defendants and Marvin M. Hickox, and is to set
aside the deed made by Ezra Read to Hickox, and the deed
from Hickox to defendant Susannah M. Read.  As a ground
of relief it is set forth that defendant, by "wiles and devices,"
completely subordinated her husband to her will, and by
threats that if he did not convey to her all his property she
would destroy the same, defendant so worked on his mind
that on the 26th of April, 1877, while prostrated with disease
and completely under her control, and while complainants
were by her orders excluded from his presence, he conveyed
the Cook county real estate, described in the bill, to defend-
ant, who now claims title under that deed.  It is further
charged that at the time of making and delivering such deeds
the grantor was, and continued thereafter until his death,
wholly insane, and incapable of making any instrument or

conveyance whatever. A copy of the bill and of the decree in the case in the State court of Indiana are made a part of this bill. There was a suggestion of the death of Marvin M. Hickox and of the insanity of Susannah M. Read, and the administrator of Hickox and the guardian of Mrs. Read were made defendants, both of whom answered the bill. The answer of the guardian of Mrs. Read submits if it shall be proved that Ezra Read conveyed the property in question to Susannah M. Read, he will insist such conveyance was made for the purpose of providing maintenance after his death for his wife and her children, because he had made large gifts of property to complainants, and that he made the conveyances to equalize the gifts which he had bestowed; that if the circuit court of Vigo county made such a decree as is alleged, he will insist it was not upon a full and fair hearing, and that, either by reason of an insane condition of mind or from some unknown cause, his ward would not permit her counsel to present her side of the case, but directed them to withdraw from the case, and in fact to allow the finding and decree to be entered as by default.

Evidence was offered by complainants, on the hearing of this cause in the circuit court of Cook county, to show the parties in the present suit were identical with the parties in the suit in the circuit court in Indiana. A witness familiar with all the parties in interest, stated the parties are identical, except the husband of complainant Hanna is joined with her in this suit as a co-complainant, and was not in the suit in Indiana. Proof was also made that the deeds for the real estate situated in Indiana and in Illinois were all executed on the same day, and perhaps within a few minutes of each other. No evidence was offered by complainants to sustain the allegations contained in the bill, of undue influence exercised by defendant over the grantor in the deeds, or as to the allegation touching his insanity, other than the certified record of the circuit court of Vigo county, Indiana, to set

aside the deed to the lands in that State, but the court sustained the objection to its admission.

Touching the mental condition of the grantor, defendants introduced testimony that showed he was at the time of the execution of the deeds in the full possession of his mental faculties, and had hitherto been, and fully understood the effect of the deeds he was making. On this branch of the case the testimony is quite full, and is very satisfactory. His attending physician was present when the deed to the Chicago property was executed, and says he signed it as a witness, and that there was nothing wrong about the grantor's mind, and that he was perfectly capable of transacting business. Other intelligent witnesses present at the time express the same opinion. The grantor was himself a physician, and the proof is, he practiced his profession up to and during his last illness. It is proven Mrs. Read was incompetent to understand or manage the defence of the suit brought against her and her children in the State of Indiana, and that in a fit of excitement she refused to proceed, and directed her lawyers managing the case for her to withdraw from the case. One of her counsel, long before the case was tried, refused to act for her because he considered Mrs. Read insane, and incapable of controlling her litigation. On the evidence submitted the court dismisssed the bill, and complainants bring the case to this court.

The only ground relied on for a reversal of the decree of the court below is, that the circuit court improperly excluded the record of the circuit court of Indiana, when offered as evidence to sustain the allegations of complainants' present bill. It is insisted the parties are identically the same in both proceedings, that the property in their present suit is the same mentioned in the proceedings in the Vigo county circuit court, and that the execution of the deeds was one and the same transaction, and hence it is said, as the record of the Vigo circuit court is conclusive evidence of the facts found

by the decree of that court, it is also conclusive evidence of the same facts alleged in the bill in this suit. It will be perceived the argument assumes, first, the parties in both suits are identically the same; and second, that the subject matter of the suits is the same. Neither proposition is warranted by the record. Literally the parties are not the same. In the case now before this court, the husband of one of complainants is a co-complainant with her, and Marvin M. Hickox was, and since his death his administrator is, a defendant, neither of whom was a party to the bill in the suit in Indiana. Nor is it correct to say the parties in interest are the same. It may be conceded the husband of complainant is a mere nominal party, and has no interest in the subject of the litigation; but it is not so with Hickox. He had an interest in the subject of the suit, as to which he ought not to be barred without a day in court. It will be remembered he conveyed and warranted the property in Chicago to Mrs. Read, and it was his privilege to be heard in the defence of whatever covenants his warranty implies. The present suit presents the first opportunity he ever had to be heard in the defence of the matters alleged against the validity of his deeds. Nor is it any more accurate to say the subject matter of both suits is the same. The bill in the circuit court in Indiana was to cancel and set aside a deed made by Ezra Read to Margarette S. Read, for property situated in that State, and the bill in this State is to have declared void a deed made by the same grantor to Marvin M. Hickox, for property situated in this State, and property which, of course, was never within the jurisdiction of the court in the State of Indiana. The deed made by Hickox to Mrs. Read was a valid deed, if he took anything under his to convey. As the deed to Hickox shall be determined to be valid or invalid, his deed to Mrs. Read will be permitted to stand or be set aside. It matters not the reasons for challenging the deeds in both cases may be essentially the same. The

reasons assigned why the deeds are invalid, are in no sense the cause of action.

It is familiar law that a judgment or decree of a court of a sister State will have given to it in the courts of all the States the same force and effect as in the State where rendered. Every judgment rendered in any State will, under the constitution and law of Congress, be held to be conclusive in any other State, when the suit is between the same parties and for the same cause of action. Certain identities must appear : First, identity of persons and parties in the same capacity; second, of cause of action; and third, that the judgment proceed from a court having jurisdiction. When all these identities concur, the matter in litigation is said to be *res judicata.* Applying these general principles, it is clear the adjudication of the circuit court in Indiana, upon setting aside the deed to the lands in that State, is conclusive in all courts as to that particular question, and no further litigation concerning it will again be permitted between the same parties anywhere, or in any court. But the court in Indiana did not assume to adjudicate concerning the lands in Illinois, and had it done so, it is as well understood as is any truism, its decree could have no extra-territorial effect. If it be conceded the parties in interest are identical in both suits, it must be admitted the subjects of the litigation are different. In one suit the litigation concerns the title to lands in the State of Indiana, and in the other it is as to lands in Illinois.

It therefore follows, if the record in the case in the court in Indiana can be admitted at all in this suit, it must be because it operates by way of estoppel in an action between the same parties concerning a different matter in controversy. Even on that ground it is not admissible in evidence in the present case. The rule usually observed on this subject is, that a judgment, when offered in evidence in a subsequent action between the same parties upon a different cause of

action, operates as an estoppel only as to matters actually at issue and determined in the former action, and it is sometimes held when such matters are not disclosed by the pleadings, the same may be shown by evidence *aliunde.* Accordingly it is understood, a judgment rendered by default admits, for the purpose of that action, the validity of the claim or thing demanded, but does not make the allegations of the complaint evidence in another suit, even between the same parties, as to another cause of action. The rule rests on the plainest principles of natural justice. A party is not barred unless he has once litigated the facts alleged against him. This doctrine has its application to the case in hand, and a pertinent inquiry is, what questions other than the validity of the deed, which was directly challenged by the pleadings, were litigated in the suit in Indiana? Was it the question of the undue influence of the grantee over the grantor in that deed, or was it the unsoundness of the mind of the grantor? As respects these inquiries the record is silent. The jury found no fact whatever, and upon what testimony the verdict and the decree of the court were based does not appear. Besides, there is affirmative testimony by parol, which is allowable, that by reason of insanity defendant was incapable of making any defence, and directed, in a sudden fit of excitement, her counsel to withdraw from the case. As well might the decree have been rendered by default, or upon *ex parte* testimony. It is idle to say there was any trial, as that term is used in the law, as to the matters and things alleged against defendant. An insane person is incapable of instituting or defending a suit understandingly, and to hold an insane person estopped by the allegations in the complaint in a former suit, when, by reason of mental incapacity, such person was unable to make a defence of any kind in an action involving a different subject matter, although between the same parties, would be to carry the

doctrine of estoppel.to an extent not warranted by reason or authority.

On neither ground suggested was the record of the court in Indiana admissible in evidence to prove the allegations of complainants' bill, and the decree of the circuit court, in my opinion, ought to be affirmed.