# A. S. Wright

### v.

# G. W. Griffey.

*Filed at Ottawa October 26, 1893.*

1. Former adjudication—*judgment as a bar to a second suit—distinction.* There is a distinction between the effect of a judgment as a bar or estoppel to the prosecution of a second suit for the same cause of action, and its effect as an estoppel when the same question is again brought in issue in another suit between the same parties upon a different cause of action.

2. Same—*identity of parties, etc.* Where the former adjudication is relied upon as an absolute bar to a subsequent action, it must be shown that the cause of action or thing to be recovered is the same in both proceedings. While the particular form of action may not be important, there must be, as between the two actions, identity of parties, of subject matter and of cause of action, to constitute the first a bar to the second.

3. Where, however, some controlling fact or question material to the determination of both of the causes has been adjudicated in the former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the later suit, irrespective of whether the cause of action is the same in both suits or not.

4. This doctrine is limited to matters necessarily involved in the litigation, but it is equally applicable whether the point was, itself, the ultimate vital point, or only incidental, but still necessary to the decision of that point. The joining of a mere nominal party in the second suit will not prevent the prior adjudication from being a bar.

5. On bill by A to compel B to assign to him certain shares of stock in a corporation, on the ground that B, the defendant, has no interest in such stock but holds the legal title for A, it appeared that prior to the filing of the bill there was an action at law between A and B, in which the court necessarily found that the stock did not belong to A alone, but belonged to them jointly: *Held,* that the judgment at law was a bar to the relief prayed in the bill.

6. Same—*how matters in issue are found.* Ordinarily the pleadings in the former suit will show what was within the issue tried and determined therein. But a fact or question is no less at issue, or within the conclusive effect of the verdict and judgment, because the averments

of the declaration and traverse are general. The difference between cases where the issue is thus general, and those where it is limited by the pleading to a single point, is, that the matter which appears by the mere inspection of the record in the latter, must in the former be established by evidence.

7. SAME—*parol evidence to show matters tried in former action.* Parol evidence of what occured upon the former trial, and what was actually decided, is always admissible in such cases.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. G. W. & J. F. KRETZINGER for the appellant:

The decree finding for the defendant on the issue of a former judgment is erroneous. *Hawley* v. *Simons,* 102 Ill. 115; *Chicago* v. *Cameron,* 22 Ill. App. 105; *Hanna* v. *Read,* 102 Ill. 596; *Riverside Co.* v. *Townsend,* 120 id. 16; *Kepley* v. *Luke,* 106 id. 395; *McGuirk* v. *Burry,* 93 id. 118; *Smith* v. *Hoag,* 45 id. 250; *McCartney* v. *McMullen,* 38 id. 237; *Umlauf* v. *Umlauf,* 117 id. 583; *Washington, etc. Co.* v. *Sickles,* 24 How. 341.

Messrs. RUNNELLS & BURRY for the appellee:

As to the application of the rule of *res judicata,* see *Noyes* v. *Kern,* 94 Ill. 521; *Hawley* v. *Simons,* 102 id. 115; *Attorney General* v. *Railroad Co.* 112 id. 536; *Umlauf* v. *Umlauf,* 117 id. 583; *Roche* v. *Beldam,* 119 id. 320; *Neff* v. *Smyth,* 111 id. 110; *Warren* v. *Cook,* 116 id. 202; *Cairo* v. *Campbell,* 116 id. 307; *Shankland* v. *Shankland,* 115 id. 526; *Cromwell* v. *County of Sac,* 94 U. S. 351; *Hopkins* v. *Lee,* 6 Wheat. 110; *Price* v. *Dewey,* 11 Fed. Rep. 104; *Bennitt* v. *Mining Co.* 18 Bradw. 17; *Betts* v. *Starr,* 5 Conn. 550; *Bennett* v. *Pulliam,* 3 Bradw. 188; *Thrifts* v. *Fritz,* 101 Ill. 463; *Gage* v. *Bailey,* 102 id. 11; Freeman on Judgments, sec. 248, and cases there cited; *Jenkins* v. *International Bank,* 111 Ill. 462; *Moore* v. *Williams,* 132 id. 590; *Casebeer* v. *Mowry,* 55 Pa. St. 422.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The single question presented by this record is, whether complainant is estopped from the further prosecution of this cause by the judgment in the common law suit brought by him, against appellee, in the Superior Court of Cook county.

There is a well-founded distinction between the effect of a judgment as a bar or estoppel to the prosecution of a second suit for the same cause of action, and its effect as an estoppel where the same question is again brought in issue in another suit between the same parties upon a different cause of action. Where the former adjudication is relied upon as an absolute bar to a subsequent action, it must be shown that the cause of action and thing to be recovered are the same in both proceedings. While the particular form of action may not be important, there must be, as is generally laid down, as between the two actions, identity of parties, of subject matter and of cause of action, to constitute the first a bar to the second. Where, however, some controlling fact or question material to the determination of both of the causes has been adjudicated in the former suit by a court of competent jurisdiction, and the same fact or question is again at issue between the same parties, its adjudication in the first will, if properly presented, be conclusive of the same question in the later suit, irrespective of whether the cause of action is the same in both suits or not. The latter is in some of the cases designated as estoppel by verdict. *Cromwell* v. *County of Sac*, 94 U. S. 351; *Hanna* v. *Read*, 102 Ill. 596; *Tilley* v. *Bridges*, 105 id. 336; *Attorney General* v. *Chicago and Evanston Railroad Co.* 112 id. 520; *Umlauf* v. *Umlauf*, 117 id. 583; Freeman on Judgments, 254-260; Bigelow on Estoppel, 36, *et seq.*, and cases cited.

In *Hanna* v. *Read, supra*, we said: "Whether the adjudication relied on as an estoppel goes to a single question or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and

public policy alike demand that a matter consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, except when the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication." And in *Attorney General* v. *Chicago and Evanston Railroad Co. supra,* after quoting from the opinion in the case last mentioned, this court, by the late Mr. Justice SCHOLFIELD, said: "This doctrine is limited to matters necessarily involved in the litigation, but it is equally applicable whether the point was, itself, the ultimate vital point, or only incidental, but still necessary to the decision of that point." The defense interposed in this case clearly falls within the class of estoppels last referred to, and the objection to its interposition, for the reason that the cause of action was not the same in both suits, can not prevail.

It is also insisted that the judgment in the common law action is not conclusive, in this suit, of the matter there determined, because the parties are not identical. The point made is, that the Silver Islet Mining and Milling Company, being a party to this and not to the former proceeding, the judgment therein is not admissible to conclude the complainant. The contention is without merit. The company, by its answer, disclaimed any interest in the subject matter of the litigation, and stands indifferently between the parties, ready to conform to any decree the court may enter between the parties to the controversy. The only relief asked against it is to preserve the right of complainant *in statu quo* as against the defendant, Griffey, or by way of execution of the decree to be obtained against him. The company is, at best, but a nominal party. The entire litigation is between Wright and Griffey, and if they have litigated the same question or matters in another suit, in a court of competent jurisdiction, where they have

been adjudicated, there is neither reason nor authority for holding that they are not concluded by such adjudication because the complainant sees proper or deems it necessary to join a mere nominal party, having no interest in the subject matter of the litigation. *Thomas* v. *Roberts*, 24 How. 333; *Follansbee* v. *Walker*, 74 Pa. St. 306; *Hitchen* v. *Campbell*, 2 W. Blk. 779; *Lawrence* v. *Vernon*, 2 Sum. 20; *Hanna* v. *Read, supra;* Bigelow on Estoppel, (2d ed.) 46, *et seq.*

It remains, therefore, to be seen whether any matter material to the issue in the common law suit was necessarily determined in that action, which, as evidence, is conclusive of the right to the relief sought by the complainant in his original bill.

Ordinarily the pleadings in the former suit, when introduced, will show what was within the issue tried and determined therein. A fact or question is no less at issue, or within the conclusive effect of the verdict and judgment, because the averments of the declaration and traverse are general. The difference between cases where the issue is thus general, and those where it is limited, by the pleading, to a single point, is, that the matter which appears by the mere inspection of the record in the latter, must in the former be established by evidence. Parol evidence of what occurred upon the former trial and what was actually decided is always admissible in such cases. It appeared from the transcript of the proceedings in the common law suit, that the declaration consisted of the common counts, with which was filed an account of various items, aggregating $4317.67. Defendant filed the general issue, with notice of set-off, and asking for judgment over. The matters of set-off consisted of $5000 received by the plaintiff from one Lamson for the use of the defendant, arising from the sale of 6000 shares of Silver Islet Mining and Milling Company stock by plaintiff and defendant, jointly, to Lamson; that plaintiff had received, in cash, $10,000 from Lamson, one-half of which,—that is, said sum

of $5000,—was due and owing by plaintiff to defendant, and
the further sum of one-half of $8333.33, being the balance of
the purchase money for said capital stock received by plain-
tiff from Lamson, etc. It also appeared that the cause was
submitted to a jury, who, after hearing the evidence, etc., re-
turned a verdict finding the issues for the defendant, and
assessing his damages at $418.70 ; that motion for new trial
by plaintiff was overruled, and judgment rendered upon the
verdict in favor of the defendant for $418.70 and costs.

Upon looking into the stenographic report of the evidence
introduced, and admitted here without objection, it appears
that it was conceded by both parties that upon the organiza-
tion of the Silver Islet Mining and Milling Company certain
properties were transferred to it, standing in the name of the
plaintiff, Wright, in payment for its stock. A one-half in-
terest had been bargained to what was known as the "Iowa
Syndicate" and John Cudahy, and that certain other shares
had been disposed of to other parties, and the residue of the
stock of the company belonged, as claimed by Wright, to
him, Wright, and as claimed by defendant, Griffey, to Wright
and himself, jointly and equally. Six thousand shares of the
stock thus owned by one or both were sold to Lamson for
$18,333.33, of which $10,000 was paid in cash to Wright,
the plaintiff, and the residue was to be paid out of profits, etc.
There is no controversy as to the residue, and no evidence
was offered tending to show liability of Wright to account for
it, and that item, in the notice of set-off, dropped out of the
case. The items of plaintiff's account filed with his declara-
tion were practically undisputed, the only contention of the
defendant being, that instead of being credits in favor of
plaintiff, a part of them were payments made to him by
Wright out of and on account of the one-half of the cash re-
ceived from Lamson. The only contest was as to the owner-
ship of the stock of said mining company remaining after the
admitted sales to others.

Griffey, in support of his notice, testified that he was an equal owner with the plaintiff in the properties transferred to said mining company, and by its transfer became the owner and was entitled to one-half its stock. He was permitted by the court to detail in that case the circumstances showing in what manner he became the owner, jointly with the plaintiff, of such properties and the stock of the company. A large number of letters of the plaintiff, and evidence of other witnesses was introduced, tending to corroborate Griffey, and show that he was the owner of one-half of the properties before the transfer, and afterward of one-half of the stock of the company. The defendant neither claimed nor set up any claim to the $5000, moiety of the cash paid by Lamson on the purchase of said 6000 shares, other than that he was the equal owner with Wright in said properties and stock. The plaintiff, Wright, testified, in his own behalf, that the mining properties transferred to said company were his, individually, and that Griffey had no right or interest in the same whatever, and accounted for portions of the stock having been issued in the name of the defendant, by explanations inconsistent with Griffey's ownership of the stock, and on that trial claimed that 3400 shares, being the same now sought to be recovered by the bill in this case, were held by Griffey for his benefit, only. It is clear, therefore, that unless it was found by the jury, in that cause, that Griffey was entitled to one-half of the $10,000 received by the plaintiff from Lamson, the plaintiff must have recovered, practically, the full amount of the items of his account, and that Griffey had no set-off, unless it was one-half of the sum of $680, which he claimed to have advanced on joint account of himself and Wright.

It is absolutely clear that that case turned upon the question whether Griffey was joint owner with Wright in the capital stock of the Silver Islet Mining and Milling Company, as claimed by him, or was Wright the exclusive owner of that stock, as he claimed. That that was the issue submitted,

appears also from the instructions of the court. The jury were told "that all the evidence introduced as to the owner- ship of the property and stock of the Silver Islet Mining Com- pany, and concerning the proceeds of the stock claimed by defendant to have been owned jointly, together with all of the other evidence, is to be taken into consideration in arriv- ing at the state of accounts between the parties." And by another instruction they were told that "the defendant, Grif- fey, is entitled to have credited against the plaintiff's claim anything that may be due him from plaintiff on account of the Silver Islet Mining and Milling Company, or its proper- ties, and if, on all the evidence before the jury, a balance is found in favor of the defendant," they should so find, and fix the amount in their verdict, etc. The jury therefore neces- sarily found that appellee, Griffey, was jointly and equally interested with Wright in the properties transferred to said mining company and in its stocks, otherwise, as we have seen, the verdict must have been for the plaintiff for over $4000, instead of for $418.70 for the defendant. By the allowance of the $5000 and the other claim of Griffey the jury reached a correct result.

If the same result was reached upon the trial of this cause, —that is, if it was found that Griffey was the joint and equal owner with Wright in the properties and stock of said com- pany,—it needs no argument to show that it would be abso- lutely conclusive against all right to the relief sought by the original bill. To determine the issue in that case it became necessary to find the fact as to whether Griffey was the joint and equal owner with Wright of the stock of said company, and that is the controlling issue in this case. By the bill, Wright seeks to compel Griffey to assign and transfer to him 3100 shares of the capital stock of the said company, issued in Griffey's name, claiming that Griffey has no interest in them,—that he, Wright, was the owner of the properties trans- ferred to the mining company, and the owner of its stocks.

Griffey sets up and insists by his answer that he was the joint and equal owner with Wright in the properties transferred to said company, and in the stock thereof, and that these stocks were issued in his name on division of the residue of the stocks remaining after the Lamson and other sales of stock had been made. It appears, therefore, that the fact of ownership of the stock of the Silver Islet Mining and Milling Company has been adjudicated in a suit between these same parties, and that the judgment remains in full force. This being so, under the rules before announced, the complainant is estopped from re-litigating the same question in this suit.

We are of opinion that the circuit court decided correctly, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*