National Life Insurance Company, Appellant, v. Joseph
Ulis et al., Appellees.

Gen. No. 39,775.

Opinion filed May 11, 1938. Rehearing denied May 26, 1938.

GEORGE GILLETTE, ELMER M. LEESMAN, and CHARLES
F. GRIMES, all of Chicago, for appellant.

HERSHENSON & HERSHENSON and JAMES B. McKEON,
both of Chicago, for appellees.

MR. JUSTICE HALL delivered the opinion of the court.
On January 31, 1933, the National Life Insurance
Company, plaintiff, filed a bill to foreclose a trust
deed to the Chicago Title & Trust Company, trustee,
given to secure the payment of certain notes for the
sum of $14,000, with interest. The number of this
document in the records of Cook county is 992839.
The notes and trust deed were dated February 7, 1928,
and were executed by Joseph and Emily Ulis, his wife.
Among the defendants named in the case are Frank H.
Lang, trustee under a trust deed recorded as document

No. 9331328, together with the unknown owners or holders of the notes which this latter trust deed was given to secure. Personal service was had upon Lang, trustee. The "unknown owners" were served by publication. This latter trust deed and the notes for which it was given as security, were also executed by Joseph and Emily Ulis, both the deed and notes are dated July 3, 1926, and the property involved is the same as that involved in the instant case. In the instant case, after all defendants had been defaulted, a decree of sale was entered, in which it was found that the trust deed of the National Life Insurance Company was a first lien on the mortgaged premises. A sale of the mortgaged property was had on May 27, 1933, and on June 3, 1933, the master who made the sale, made a report thereof, in which it is recited that the sale was made to the National Life Insurance Company. On April 26, 1934, Jennie I. Waterman, under sec. 50, par. 8 of the Civil Practice Act [Cahill's Ill. St. 1933], filed a petition in the instant proceeding concerning the decree of the court entered therein. In this petition it is recited, *inter alia,* that the petitioner is the owner of a note for the sum of $19,300, executed by Joseph Ulis and Emily Ulis, dated July 3, 1926; that to secure such note and interest, Joseph and Emily Ulis, on July 3, 1926, executed a trust deed conveying to Frank H. Lang, trustee, the same premises as are involved in this foreclosure proceeding, and that the mortgage being foreclosed, is inferior to the mortgage described in her petition. The prayer in this petition is that the court enter an order setting aside, or altering, the decree of foreclosure entered in the instant case and for further relief. On April 9, 1935, the National Life Insurance Company filed an answer to this petition, in which it is recited, among other things, that the note for $19,300, hereinbefore referred to, purports to be secured by the mort-

gage trust deed dated July 3, 1926, as alleged, and further admits that Jennie I. Waterman was not made a party to the instant proceeding by name and was not served with a copy of the complaint, or by notice sent by mail, and that no copy of the decree entered therein was served upon her. It is further recited in this answer that on July 3, 1928, Harry S. and Jennie I. Waterman filed a complaint in the circuit court of Cook county in equity against Joseph and Emily Ulis, Chicago Title & Trust Company, a corporation, trustee, Frank H. Lang, trustee, Irvin Jacobs, trading as Irvin Jacobs & Company, and the unknown owner or owners of the note or notes secured by the trust deed to the Chicago Title & Trust Company, recorded as document No. 9929839; that in the said complaint it is alleged, among other things, that on July 23, 1926, the petitioner owned the premises in question, and that on July 3, 1926, Joseph and Emily Ulis purchased the same from the petitioners, and as part payment of the purchase price, gave the note of $19,300, dated July 3, 1926, all of which was due and payable 10 years from its date, with interest at 6 per cent per annum; that the principal note provided that if any default be made in the payment of any instalments of principal or interest agreed to be paid, and if any portion thereof should remain due and unpaid for a period of 30 days after the same should become due, it should, at the option of the legal holder of the note thereupon become due and payable immediately, without notice, and should be collectible at any time after such default, anything in the note or trust deed to the contrary notwithstanding; that all of the covenants and conditions in this second mortgage trust deed, given to secure the payment of this note, were expressly made a part thereof, and that the note was indorsed in writing by Joseph and Emily Ulis and delivered to the Watermans as a part of the purchase price of the premises

involved here; that at the time of the filing of the bill in the circuit court, the Watermans were the owners and holders of the note and the interest due thereon, and that to secure the payment of that note, Joseph and Emily Ulis conveyed the premises to Frank H. Lang as trustee. It is further alleged in this answer that this latter trust deed contained the following provision:

"It is understood and agreed that when the remaining balance of the first mortgage now on the above described premises falls due on April 26, 1928, that the grantors herein will have the privilege of placing a new first mortgage on said premises for as large an amount as possible, or, that the owner of said second mortgage may procure said first mortgage, provided the rate of interest shall not exceed 6 per cent per annum, payable semi-annually and that the cost of procuring said mortgage shall not exceed 1 per cent per year for the length of time that said first mortgage shall run and that the duration of this first mortgage shall not exceed five years and that the second mortgage described herein will be subrogated to said first mortgage so to be placed on said property.

"It being expressly understood and agreed that any prepayments on said first mortgage so to be placed on said property, shall not exceed $1,000 per annum and that the proceeds of said new first mortgage so to be placed on said property shall be used first to pay up the remaining balance that may be then due on said first mortgage, according to its terms and conditions and that the balance of said money shall be paid to the then owner and holder of said second mortgage to reduce the principal indebtedness provided for therein and that said money so received shall be applied to the last payment or payments provided for in said second mortgage.

"It is further understood and agreed that in the event the grantors herein pay any sums in excess

of $100 per month, as above provided for, said excess sums so paid shall be applied on the last payment or payments provided for herein and that said monthly payment as herein provided shall continue to be made each and every month as herein provided." In this answer of the National Life Insurance Company, it is further alleged that in the complaint filed by Harry S. and Jennie I. Waterman on July 3, 1928, the trust deed from Joseph and Emily Ulis to Frank H. Lang, trustee, provided, among other things, that in the event of a breach of any of the covenants or agreements therein contained, the whole of said indebtedness, including principal and all earned interest, at the option of the legal holder thereof, without notice, became immediately due and payable; that the complainants, Harry S. and Jennie I. Waterman, because of the breach of the covenants by the defendants therein, Joseph and Emily Ulis, "do hereby exercise their option and do hereby declare the whole unpaid balance of said note secured by the trust deed, to be now due and payable, according to the terms and provisions of the trust deed"; that in this complaint they prayed that the mortgage therein sought to be foreclosed in the instant proceeding be declared to be a junior mortgage to that of Harry S. and Jennie I. Waterman because of the fact that upon the release of the mortgage trust deed, for which the mortgage sought to be foreclosed was substituted, became a junior mortgage to that of Harry S. and Jennie I. Waterman hereinbefore referred to. Harry S. and Jennie I. Waterman filed a general replication to this answer, and after a hearing on the bill to foreclose, the answer of the National Life Insurance Company and the replication, the court entered a decretal order dismissing the complaint for want of equity. No appeal was taken from this decree.

At the time the Watermans acquired the real estate in question, it was subject to a first mortgage trust

deed dated April 26, 1923, given to secure an indebtedness of $18,000, bearing interest at the rate of 5½ per cent per annum, and on July 3, 1926, the Watermans conveyed the premises to Joseph and Emily Ulis, and the trust deed to Frank H. Lang, trustee, was given to secure a balance due by the Ulises to the Watermans. This last mentioned trust deed was then secondary and subject to the mortgage trust deed dated April 26, 1923. On January 13, 1928, through a broker, Joseph and Emily Ulis made application for a loan to refinance the loan which existed at the time the Watermans acquired the property, and on February 7, 1928, the Ulises executed the trust deed now in issue in the instant suit, to secure a loan for $15,000, which they procured, and the entire proceeds thereof were applied to the extinguishment of the indebtedness which existed at the time the Watermans acquired the property.

It is the claim of the plaintiffs that inasmuch as the mortgage loan in question was used for the purpose of liquidating the indebtedness just referred to, that the plaintiff in this proceeding should have and has a first lien in subrogation to the lien of the mortgage which its money paid off, that the rights of plaintiff in this proceeding are not affected by the contract between the Ulises and the Watermans, that it was within its right to have made a loan of only a sufficient amount to pay off the original mortgage, that the rights of the Watermans were in no wise affected by plaintiff's act in making a new loan and taking a new mortgage, that the refinancing provision in the agreement between the Watermans and the Ulises is so vague and uncertain as to be unenforceable, and that the question of priority of defendants' mortgage over plaintiff's mortgage was adjudicated and settled by the decree of the superior court herein referred to. It is the claim of Jennie I. Waterman that by reason of the

fact that the plaintiff loaned only enough money to pay off the original first mortgage, she was prevented from enjoying the benefits of the refinancing contract entered into between her and the Ulises, that plaintiff had notice of her rights, and that therefore plaintiff does not come into equity with clean hands and should be denied the right to be subrogated to the lien of the first mortgage, and that the Ulises' mortgage to the Watermans has priority over plaintiff's mortgage. It is also claimed that the suit of the Watermans, which was dismissed for want of equity, was prematurely brought, in that there had been no default at that time and that none of their rights were there adjudicated.

The matter was referred to a master in chancery, who, after taking testimony, reported and found that the lien of Jennie I. Waterman was superior to that of plaintiff, and recommended that the decree of foreclosure heretofore entered, be set aside, that a new decree be entered in accordance with the findings of the master's report, that the sale made in pursuance of the original decree, be set aside, and that a new sale be made in pursuance of a decree to be entered in accordance with the findings of the master. On July 16, 1937, the court entered a decree approving the master's report finding that the lien of the Watermans was superior to that of the plaintiff in the instant case, and ordered that a sale of the property be made in satisfaction of such lien. It is from this decree that the appeal herein is being prosecuted.

In this proceeding the plaintiff introduced, and there was received in evidence, the entire record in the action brought by the Watermans on July 3, 1928, including the pleadings, process and decree, and it is to be noted that in that suit the Watermans set forth the identical provisions of the mortgage upon which they relied for priority over plaintiff's mortgage trust

deed in the instant case. It is also to be noted that in that suit the Watermans set forth the intentions of the parties, including themselves and Joseph and Emily Ulis, with respect to the provisions of the mortgage given by the Ulises to the Watermans, regarding the obtaining of an additional loan, as hereinbefore set forth. It is also alleged that the Ulises had failed to comply with their agreement, and that because of the release of the original first mortgage, the Watermans' mortgage became a first mortgage and a prior lien on the premises.

In the decree appealed from, the court attempted to dispose of the plaintiff's claim and held that the old matter was not adjudicated in the former decree by the following statement: "A hearing was had upon the issues made up on said bill of complaint and same was dismissed for want of equity. The records in this cause do not show that the evidence in that cause was preserved by a certificate of evidence nor that the decree in that cause found any specific facts proved on the hearing. It does not appear that the court in that cause passed upon the question of the priority of lien between the purchase money second mortgage trust deed held by the Watermans and the $14,000 trust deed held by National Life Insurance Company, which was made a party defendant to said suit."

The whole basis of the Watermans' claim in both proceedings is that they have a priority of lien over that of plaintiff. On the hearing before the master, there was some evidence offered and received as to remarks made by the chancellor and as to colloquies between the parties upon the hearing in the first proceeding. This is all the evidence that was offered or received bearing on any of the questions here. The issue in the first case was made and the case was heard and decided on the pleadings, and, as stated, precisely the same issue was involved as is involved

here.   On this question, the Supreme Court in *Harding v. Harding,* 352 Ill. 417, said:

"The doctrine of *res judicata* is, that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction, cannot again be litigated by new proceedings before the same or any other tribunal, except as the judgment or decree may be brought before a court of appellate jurisdiction for review in the manner provided by law.   A judgment or decree so rendered is a complete bar to any subsequent action on the same claim or cause of action, between the same parties or those in privity with them.   The doctrine extends not only to the questions actually decided but to all grounds of recovery or defense which might have been presented.   (*Wright v. Griffey,* 147 Ill. 496; *Markley v. People,* 171 id. 260; *Terre Haute and Indianapolis Railroad Co. v. Peoria and Pekin Union Railway Co.,* 182 id. 501; *Harvey v. Aurora and Geneva Railway Co.,* 186 id. 283; *Godschalck v. Weber,* 247 id. 269; *People v. Harrison,* 253 id. 625.)   Where the former adjudication is relied on as an absolute bar to a subsequent action, it must be shown that the cause of action, the thing to be recovered and the parties are the same in both proceedings.   The principle of *res judicata* applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties.   In such cases the determination in the former suit of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the later suit regardless of the identity of the cause of action, or the lack of it, in the two suits.   When the second action between the same parties is upon a different cause of action, claim or demand, it is well settled that the judgment in

the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action, the burden of proof is on him who invokes the estoppel, and extrinsic and parol evidence is admissible to prove that the precise question in the second case was raised and determined in the first. (*City of Chicago v. Cameron,* 120 Ill. 447; *Wright v. Griffey, supra; Hanna v. Read,* 102 Ill. 596; *Sawyer v. Nelson,* 160 id. 629; *Young v. People,* 171 id. 299; *Stone v. Salisbury,* 209 id. 56.)''

The case of *Sattenstein v. Earl,* 328 Ill. 148, is exactly in point. In that case, the Supreme Court said:

''When a demurrer is sustained to a bill in equity, an order entered by the court expresses the conclusion of the court. If the demurrer is sustained and goes to the right to relief it will be followed by a decree dismissing the bill for want of equity. If lack of equity appears from the facts stated, complainant is entitled to no relief. The decree follows, or may follow, immediately upon sustaining the demurrer, but if solicitor desires, he may, as in this case, be granted an extension of time to file an amended bill stating a case, if he can, invulnerable to demurrer. If he does not meet the terms upon which an amended bill is allowed to be filed, the interlocutory order that the demurrer be sustained will be followed by the final order dismissing the bill for want of equity, as in this case. The contention of counsel that the words 'for want of equity' in the decree are superfluous is a misapprehension of the rule applicable to this case. He might have asked the court to dismiss the bill without prejudice to his rights to file another bill, but

he did not, and cannot complain if the rule of equity pleading and procedure is applied to his case.

"It is said in the argument that 'the plea of *res judicata* should not have been sustained because the court never passed upon the equities in the cause.' . . .

"The fact that the former decree was rendered upon demurrer to the bill does not impair it as a bar to the present action. In *People v. Harrison,* 253 Ill. 625, it was said: 'It is true that a judgment, to be a bar, must have been rendered upon the merits. A judgment that a declaration is bad is not a bar to a declaration stating facts which do constitute a cause of action. It is, however, settled law that it makes no difference whether the facts upon which the court proceeded were proved by evidence upon issue joined or were admitted by way of demurrer to a pleading stating the facts. In either case the judgment rendered is equally available as an adjudication, and the facts so established cannot be again drawn in question between the same parties. A judgment upon a demurrer for defect in the pleadings will not bar another action for the same cause, but a decision upon the merits of a cause of action or defense upon demurrer will be a bar in a subsequent proceeding upon the same facts. *Vanlandingham v. Ryan,* 17 Ill. 25; *Marie Church v. Trinity Church,* 253 id. 21.' "

Our conclusion is that the whole matter was adjudicated in the former decree, that the decree was final, that no appeal was taken from that decree, and that, therefore, there is no merit in petitioner's claim here.

It has been suggested by the plaintiff in this proceeding that the court erred in giving petitioner's (defendant's) mortgage priority over complainant's for the reason that plaintiff's mortgage stood in place of the original first mortgage by right of subrogation. In view of our holding that defendant's petition is

412

barred by reason of the fact that the matter has already been adjudicated, we do not deem it necessary to pass upon this question. However, the cases of *Tyrrell v. Ward*, 102 Ill. 29, and *Kaminskas v. Cepauskis*, 293 Ill. App. 273, seem to support plaintiff's contention in this regard.

The decree of the superior court of July 16, 1937 is reversed.

*Reversed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.