John A. Bechtel, Defendant in Error, v. George A. Marshall, Plaintiff in Error.

## Gen. No. 29,120.

1. NEGOTIABLE INSTRUMENTS—*consideration for notes.* Notes given by one of the three owners of the stock of a corporation to each of the others individually were based upon the same consideration where it is apparent that he gave them to wipe out his indebtedness to the corporation and the payees took them in settlement of the indebtedness of the corporation to them.

2. FORMER ADJUDICATION—*person having sole beneficial interest in result of suit is real party in interest bound by decree.* A son to whom, along with a sister, was left the entire estate of his father, was the real party in interest in a suit begun by the father and continued in the name of the sister, as executrix, with the understanding that he was to have whatever was recovered and that he was to attend to the matter himself and pay all expenses of the suit.

3. FORMER ADJUDICATION—*when former judgment conclusive against real party in interest.* Where plaintiff in an action upon a promissory note was the real party in interest in an action upon another note given at the same time upon the same consideration, a judgment for defendant in the former case was binding on plaintiff in the later one where, although there was a general verdict in the first case, all the issues involved in the pleas

in that case were presented in the second and a finding for defendant on any of them would entitle defendant to judgment.

4. NEGOTIABLE INSTRUMENTS—*when promissory note based on no consideration.* A note given by a stockholder of a corporation to another stockholder with the understanding that he was not liable thereon and would never be called upon to pay it but that it was given merely to enable the books to be closed, and it represented charges against the maker for losses of the corporation for which he was not liable and for stock which he did not agree to take, was without consideration.

Error by defendant to the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed. Opinion filed April 29, 1925.

WHITMAN, THOMPSON, TYRRELL & CHAMBERS, for plaintiff in error; LLOYD C. WHITMAN, of counsel.

CULVER, ANDREWS & KING, for defendant in error.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this writ of error, the defendant Marshall seeks to reverse a decree of the circuit court of Cook county, whereby he was ordered to pay the complainant Bechtel $26,293, and his cross-bill was dismissed for want of equity. Bechtel originally began his action against Marshall at law on a promissory note signed by Marshall, dated February 1, 1908, for the sum of $22,843.56, payable to the order of one Mooney and indorsed by the latter. It developed upon the trial that the case presented a long and involved accounting and it appears that the trial judge suggested and the parties consented that the case be transferred to the equity side of the court and that was done and a reference was made to a master in chancery to hear the evidence.

The defendant pleaded the general issue, and also filed a number of special pleas, all of which set up, in substance, a total want or a total failure of con-

sideration. The master found the issues thus presented against the defendant and submitted a report accordingly and his report on those matters was confirmed by the chancellor.

The cross-bill of the defendant, heretofore referred to, was filed after the master had submitted his report on the issues involved in the original pleadings, and the issues presented by the cross-bill were not referred to the master but were heard by the chancellor.

It appears that the Lake Tanning Company of Illinois (to which we shall refer as the Illinois Company) was in business in Chicago. Its outstanding capital stock was held and owned in equal parts by James E. Mooney and Henry H. Bechtel (the father of the complainant and cross defendant in the case at bar) of Cincinnati and the defendant Marshall of Chicago. This company went out of business on June 1, 1907, when it was succeeded by the Lake Tanning Company of Ohio (to which we shall refer as the Ohio Company). However the books of the Illinois Company were not closed until the following spring, the closing entries appearing to be made under date of May 1, 1908. The entries then made indicated a credit balance in favor of Mooney in the sum of $22,843.56, a credit balance in favor of Henry H. Bechtel in the sum of $16,125.65, and a debit balance against Marshall in the sum of $38,969.21. It will be seen that the debit balance appearing against Marshall equals the sum of the credit balances appearing in favor of Mooney, and Henry H. Bechtel. The books of the Illinois Company were closed up by one Gordon, who was Mooney's private secretary, and who came up to Chicago from Cincinnati for that purpose. It is the defendant's contention that on this occasion Gordon made out two notes, one to Mooney's order for $22,843.56 and the other to the order of Henry H. Bechtel for $16,125.65, which he requested the defendant to sign "in settlement of your account."

It is the defendant's further contention that he demurred to Gordon's request that he sign these notes on the ground that he did not owe the money, expressing the fear that he might some day be asked to pay them but that Gordon assured him to the contrary and explained that some such procedure was necessary to formally close the books of the Illinois Company. After the defendant signed the notes, Gordon closed his account in the books of the Illinois Company by crediting it with an item reading, "By sundries $38,969.21," and he closed the accounts of Mooney and Henry H. Bechtel by charging them with the amounts of the notes drawn to each of them, thus charging Mooney's account with $22,843.56 and Henry H. Bechtel's account with $16,125.65.

The cross-bill filed by the defendant alleged that in 1911 (prior to the institution of the suit at bar), Henry H. Bechtel brought suit against the defendant Marshall on the note he held for $16,125.65 and that, pending the trial of that case, Henry H. Bechtel died leaving all his property to his son John A. Bechtel (the complainant and cross defendant in the case at bar) and his daughter Nellie A. Bechtel, and appointing the latter executrix of his estate; that the daughter of Henry H. Bechtel, as such executrix, was substituted as the party plaintiff in that case and it thereafter proceeded in her name and, when it later was reached for trial, it was tried on its merits, the issues formed being submitted to a jury, resulting in a general verdict in favor of the defendant, on which, judgment against the plaintiff was duly entered. The cross complainant contended that the complainant in the case at bar, John A. Bechtel, was the real party in interest in the prosecution of the suit against him on the other note; that the issues involved in that case were the same as those presented in the case at bar, and therefore that he is precluded and estopped from any recovery in this case by the

judgment which was rendered against him and in favor of the defendant in the other case. As before stated, John A. Bechtel instituted the present proceedings on the Mooney note which he had previously acquired.

As expressed by our Supreme Court in *Hanna v. Read*, 102 Ill. 596, "Where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put up in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not. This species of estoppel is known to the law as an estoppel by verdict * * *. The fundamental principle upon which it is allowed * * * is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication." If the defendant and cross complainant may successfully invoke an estoppel by verdict in the case at bar, by reason of the findings and judgment rendered in his favor in the suit on the so-called Bechtel note, it is apparent that the consideration for the two notes must have been the same. In his answer to the defendant's cross-bill, complainant and cross defendant, John A. Bechtel, alleges that the note he is here suing on (to which we shall refer as the Mooney note) was given by the defendant and cross complainant Marshall to Mooney "in consideration of money owing to said James F. Mooney at the time of the giving

of said note"; that while the Mooney note was given
by Marshall at or about the same time the Bechtel
note was given, nevertheless the Mooney note here
sued upon "was not given for the same consideration
as the one which was given to H. H. Bechtel, but
the same was supported by other and different con-
siderations, based upon different elements, charges
and credits." In proof of the respective contentions
of the parties on the issues made up by the cross-bill
and answer thereto, they submitted to the chancellor
certain of the evidence appearing in the transcript
as a part of the report of the master, of witnesses
who had testified in the hearing of the issues on the
original pleadings before the master, and also some
additional evidence. One of those witnesses was Gor-
don, and the master stated in his report that he be-
lieved Gordon's version of what took place at the
time these two notes were executed. It appears from
Marshall's account in the ledger of the Illinois Com-
pany that his debit balance to that company at the
time the books were closed was made up entirely of
charges against Marshall for one-third of the annual
losses of the company,—including the Ohio Company
down to May 1, 1908, when the books of the Illinois
Company were closed (which the three stockholders
had been in the habit of charging off against them-
selves each year) and a charge of $12,697.36 being the
amount of Marshall's alleged unpaid stock subscrip-
tion with interest and a number of other interest
items. This was the master's finding as to what made
up Marshall's debit balance. Gordon testified that
he had a number of talks with Marshall when he came
up to Chicago to close up the books of the Illinois
Company in May, 1908, and showed Marshall his ac-
count many times, which account showed a debit bal-
ance of $38,969.21. Of course, this was a debit bal-
ance in Marshall's account with the Illinois Company
and not in accounts with Mooney or Bechtel. Gordon

testified further that he asked Marshall to sign the two notes in question "in settlement of this account," —that is, Marshall's account with the Illinois Company. The master found in this connection that Marshall signed the Mooney note and gave it to Gordon for Mooney, "for $22,843.56 of his debit balance of $38,969.21," and that he signed the Bechtel note and gave it to Gordon for Bechtel, "for $16,125.65 of his debit balance of $38,969.21." In the same paragraph of his report the master proceeds to find that "as shown by the books, Mooney assumed the payment of $22,843.56 of Marshall's indebtedness, and Bechtel assumed the payment of $16,125.65 thereof. All the above was part of the settlement." The master then held that "this assumption," together with the further assumption of certain other debts of the Illinois Company, "was an adequate consideration for these notes," although the master also specifically held that Marshall was not legally obligated to pay any part of the Illinois Company's losses which made up a large portion of Marshall's debit balance to the company at the time these notes were given. From the foregoing it appears that the part of Marshall's debit balance to the Illinois Company which Mooney "assumed" just equalled the amount the Illinois Company owed Mooney as shown by the credit balance appearing in his ledger account with the company at that time, and that the part of Marshall's debit balance to the Illinois Company which Bechtel "assumed" just equalled the amount the Illinois Company owed Bechtel as shown by the credit balance appearing in his ledger account with the company at that time. It may be that different items of consideration entered into the respective accounts of Mooney and Bechtel with the Illinois Company but, in our opinion, these may not be carried over into Marshall's account with that company, and be attached to the different parts of Marshall's debit balance which each of them saw fit to assume. Although the notes which

Marshall signed were drawn to the order of Mooney and Bechtel, they were clearly given to wipe out his indebtedness to the Illinois Company, and Mooney and Bechtel received them, not in payment of any indebtedness from Marshall to them, but in payment of the amounts the Illinois Company owed them, as shown by the credit balances then appearing in their respective ledger accounts with that company. From the foregoing it is our conclusion that the same consideration was involved in both the Mooney and the Bechtel notes.

It must further appear, if the defendant and cross complainant may successfully invoke an estoppel by verdict in the case at bar, that, although he was not a party to the record in the suit on the Bechtel note, he was nevertheless such a party in interest in that case as to be bound by the judgment there rendered. Freeman in his Treatise on the Law of Judgments (2d ed.), says in paragraph 174 that "there is a numerous and important class of persons, who, being neither parties upon the record, nor acquirers of interests from those parties after the commencement of the suit, are nevertheless bound by the judgment. Prominent among these are persons on whose behalf and under whose direction the suit is prosecuted or defended, in the name of some other person. * * * The fact that an action is conducted in the names of nominal parties cannot divest the case of its real character, but the issues made by the real parties, and the actual interests involved, must determine what persons are precluded from again agitating the question; and who are estopped by the previous decision." Of course, as the same author points out in paragraph 159, the parties must be mutually bound and "nobody can take benefit by a verdict that had not been prejudiced by it, had it gone contrary."

In *Cole v. Favorite,* 69 Ill. 457, the following facts appeared: Cole stored 2,390 barrels with Favorite

and the latter agreed to insure them in responsible insurance companies. Favorite covered everything in his packing house, including Cole's barrels, with blanket policies in responsible companies. Later Cole, wanting to raise money, applied to Favorite for a receipt to use with his banker as security. Favorite gave him a receipt reading: "Received of Richard Cole one thousand one hundred and ninety barrels, to be held until September 1, 1865, subject to storage and insurance." Cole used this receipt to secure his note at his bank. In October, Favorite's warehouse, with all its contents, was destroyed by fire. Thereafter Cole and Favorite entered into an agreement providing that Favorite was to institute suits against the insurance companies in his name on the policies he held to recover the value of the property destroyed, Cole agreeing to pay such proportion of the expense of the suits, as would be represented by such part of the amounts recovered, as applied to his barrels. On the trial of these cases, Favorite was not able to recover from the insurance companies the value of the 1,900 barrels covered by the receipt he had given Cole for the reason that it evidenced an agreement on Favorite's part to store and insure the barrels up to September 1, and no new agreement to store and to insure was proven as to those barrels after that date. Cole thereafter sued Favorite for the value of those barrels, not claiming negligence on the part of Favorite as a warehouseman, but claiming solely that Favorite had agreed with him to have the barrels insured, and for breach of his agreement in that regard, Cole claimed Favorite was liable to him for the value of the 1,190 barrels. The court held that Cole was barred from any right of action against Favorite for the value of those barrels pointing out, referring to one of the suits against the insurance companies, that although it was in the name of Favorite, nevertheless it was prose-

cuted at the request of and for the benefit of Cole. "He advised and directed it, was a witness therein and while he was not formally a party to the record, he was a party in interest, and must be regarded as a privy. In that suit it was adjudicated and determined that the receipt was a contract, and by its terms and conditions appellee (Favorite) was not liable to appellant (Cole) to insure the barrels therein named after the 1st of September, 1865. In this suit appellant is attempting to readjudicate the same question. That cannot be done. The merits of this question have been previously tried, and parties and privies must be concluded." If it could be conceived that Cole might have had some right of action against the insurance companies involving the binding force of the receipt between him and Favorite, it is clear likewise that he would have been precluded from relitigating the question of the effect of the receipt, in any such action subsequently tried.

Similar decisions are to be found in *Bennitt v. The Wilmington Star Min. Co.*, 18 Ill. App. 17, 21; 119 Ill. 9; *McDonald v. Western Refrigerating Co.*, 35 Ill. App. 283, 295; *Mooney v. Moriarty*, 36 Ill. App. 175, 179; *Hanna v. Read*, 102 Ill. 596, 605; *Cheney v. Patton*, 134 Ill. 422, 437; same case, 144 Ill. 373; *Lightcap v. Bradley*, 186 Ill. 510, 530; *Anderson v. West Chicago St. R. Co.*, 200 Ill. 329, 335; *Ward v. Clendenning*, 245 Ill. 206; and *Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley*, 279 Ill. 118.

Turning now to the facts involved in the case at bar, the record discloses the following: When Henry H. Bechtel died, his suit against Marshall on the Bechtel note was pending. Nellie A. Bechtel, executrix of the estate of Henry H. Bechtel, testified that after her father's death she turned the Bechtel note over to her brother, John A. Bechtel, saying she knew nothing about it, was in too much trouble to think about it and if he could do anything with it,—"here

is the note,'' and he said he would see what he could
do with it. She further testified that she did not
know whether she discussed with her brother the ques-
tion of the advisability of her proceeding with the
case her father had instituted on the note, as execu-
trix, but she told him she could not go on with it but
if he would undertake it he could do so but that she
was not willing to undertake it. She further testi-
fied that she discussed with her brother the matter
of who was to pay the expenses incident to the case;
that the matter of paying $1,000 was discussed and
she told him she did not have the money and he said
he would pay it; she said she did not know whether
he had paid it; that the estate had not, and she added,
''if he wins the suit, he would get it.'' She also tes-
tified that her brother had not bothered her, and ''it
has just been going on, and he has taken care of it'';
that her attorney said to her, ''If John wants to un-
dertake it, let him have it,'' but she could not recall
whether her lawyer had advised her that he thought
if judgment were recovered on the note it could not
be collected. There was also introduced in evidence
before the chancellor, on this question, an affidavit
made by Nellie A. Bechtel prior to the time she gave
her testimony by deposition, to which we have re-
ferred. In this affidavit she stated that her father
left a will in which he left his property to her brother
and herself; that among the assets of the estate
was the Bechtel note; that she understood Marshall
denied liability on it, and soon after she was ap-
pointed executrix she turned it over to her brother,
who thought he might be able to do something with
it; that if any suit was brought against Marshall on
this note it was prosecuted by her brother and for his
benefit and she had nothing to do with it except to
sign an application to the probate court for authority
to proceed with the suit but that ''this was merely
formal, as it was agreed between my brother and my-

self that he should have whatever might be realized from the suit''; that she understood her brother took the matter up with some Chicago lawyers but that she did "not know what was done with the case after that, as it was entirely in my brother John's hands and he was to get what he could out of it.''

It appears from the record that Nellie A. Bechtel filed her final account as executrix in July, 1915, showing all debts of the estate paid and that she had certain assets on hand, among which was the Bechtel note which she asked leave to distribute in kind to herself and her brother, and the court granted the leave so requested. It appears further that Nellie A. Bechtel's lawyer advised her to spend no more money in the suit on the Bechtel note, but that if John wanted to do so, "let him have it.'' John A. Bechtel apparently did want to go ahead with the suit. Nellie A. Bechtel's lawyer then advised her in substance that her brother could not be substituted as party plaintiff in the suit on the Bechtel note in lieu of her father but that a new suit would have to be begun and that would involve possibly years of delay, but that the then existing suit which her father had begun could be carried on by her as executrix, and she could be substituted in that capacity (though not as an individual) for her father as party plaintiff, but, if that were to be done, she would have to have the probate court enter an order setting aside the prior order giving her leave to distribute this note in kind to her brother and herself, and also another order giving her authority to prosecute the case as executrix. Thereafter, that action was taken and the orders referred to were entered in the probate court. In her petition presented to the court in that connection she represented that it was "the desire of John A. Bechtel and the executrix to prosecute'' the suit on the Bechtel note. After the orders referred to had been entered by the probate court, Nellie A. Bechtel, as

executrix, came into the suit on the Bechtel note and she was substituted therein as party plaintiff.

On that state of facts we are of the opinion that, thereafter, John A. Bechtel was the real party in interest, as plaintiff, in the suit on the Bechtel note. The evidence shows that he retained the lawyers who tried the case, and paid them and had the sole care and management of the plaintiff's case. The facts above referred to show that as between Nellie A. Bechtel and her brother, the Bechtel note became entirely the property of the latter and the sole reason why she, as executrix, was substituted as plaintiff in lieu of her father, in the then existing suit which the latter had brought on the Bechtel note, was to avoid the loss of time which would have been involved if a new action had been instituted by John A. Bechtel. We might paraphrase the language used by our Supreme Court in the case of *Hanna v. Read, supra,* and say that the utmost that can be claimed is that Nellie A. Bechtel, as executrix, was merely a formal party in the case, having really no interest in the Bechtel note which would be affected by the result of the suit. In fact, by her testimony, she disclaimed all interest in the note and showed that she was used in the transaction merely as an instrumentality by which her brother attempted to collect the Bechtel note from Marshall by means of the suit which had previously been brought on it and was then pending, thus avoiding the considerable loss of time which would have resulted if he had instituted a new action of his own. If the plaintiff recovered in the suit which was carried on, in view of the agreement existing between her brother and herself, she, as executrix, "would have subserved the purpose of a mere conduit, through which" the proceeds of the note would have passed from Marshall to John A. Bechtel. So far as the parties to the two suits are concerned, we are of the opinion that the defendant is in a posi-

tion to urge here that the complainant, John A. Bechtel, is precluded, by the judgment in the suit on the Bechtel note, from prosecuting the case at bar on the Mooney note.

But there is a third element which must be shown, if such a contention may be successfully urged here, by the defendant and cross complainant, namely, it must appear that such matters as are involved in the decision as to Marshall's liability in the case at bar were necessarily included in the questions which were litigated and determined in the suit on the Bechtel note. *Wright v. Griffey,* 147 Ill. 496. We have stated that in our opinion the two notes involved the same consideration. In the case at bar the defendant interposed a plea of the general issue and sixteen special pleas. Two of the latter pleaded a total failure of consideration. The remaining fourteen pleas set up, in substance, a total want of consideration, although five of them admit an indebtedness of $5. It was stipulated by the parties in the case at bar that the pleadings filed herein were to be taken as determining the parties and the general subject of the litigation and that the rights of the parties, as made by the proof, should be determined and that both parties should have the same advantage as though they had properly and formally pleaded any right or defense which might be available to them under the proof. In the suit brought against him on the Bechtel note, the defendant, Marshall, filed a plea of the general issue and six special pleas. All of the latter but one set up a total want of consideration. One of them set forth that the note sued on was an accommodation note which, in effect, amounted to a claim that the note was without consideration. The last plea also alleged a total want of consideration except to the extent of $5, which was admitted as an indebtedness. All of these pleas involved in both cases which were based on a

claim of a total want of consideration were based on the allegation that the notes in question were based on Marshall's "supposed" indebtedness to the Illinois Company, amounting to $38,969.21, except the plea in the Bechtel case, which alleged that the note there involved was an accommodation note. It was stipulated by the parties in the case at bar that in the trial of the issues presented in the Bechtel case all the issues made by the pleadings were submitted to the jury for their determination under the instructions of the court.

It is the contention of the complainant in the case at bar that the pleas interposed by the defendant in the Bechtel case raised some issues which have not been raised in the case at bar and further that the pleas in the Bechtel case were inconsistent with each other; that a decision upholding one would necessarily negative a decision upon the others and that inasmuch as there were no special findings showing upon which plea or defense the jury decided that case, the defendant here is not in a position to invoke an estoppel by verdict because of the judgment rendered in his favor in the Bechtel case. The defendant contends, on the other hand, that the general verdict rendered in his favor in the Bechtel case is at least prima facie evidence that all of the issues presented in that case were found in his favor.

In our opinion it is not necessary to consider that question for we consider it clear that the defendant is in a position to preclude a recovery by the complainant in the case at bar on the Mooney note, by invoking the doctrine of estoppel by verdict, based upon the judgment in his favor in the suit on the Bechtel note, no matter which of the pleas which were interposed in that case we consider the jury there based its verdict upon.

The first plea interposed by the defendant in the Bechtel case was a plea of the general issue. Of

course, if it be considered that the verdict for the defendant in that case was based on that plea, that would conclude the same issue here. The second plea interposed in the Bechtel case was a general plea of total want of consideration. The same defense was included in the second, as well as other pleas filed in the case at bar. So, if the general verdict for the defendant in the Bechtel case be considered as based on that plea, the issue there raised could not again be tried out here. The third plea interposed in the Bechtel case alleged that the note there sued upon was "what is generally and commonly called and known as an accommodation note, and that the said note was made without any good and valuable consideration." None of the pleas filed in the case at bar pleaded a want of consideration based on the claim that the note here sued upon was an accommodation note. But, as already pointed out, the parties in the case at bar stipulated that the rights of the parties should be determined as made by the proof and that both parties were to have the same advantage as though they had properly and formerly pleaded any right or any defense which may be available to them under the proof. The defendant testified in the case at bar that he considered the note here sued upon as accommodation paper, given for the purpose of enabling the new corporation (the Ohio Company) to go through,—"to do whatever they wished to do with it"; that he did not know whether they wanted to borrow money,—"Mr. Bechtel claimed that he wanted to borrow money on it." If one of these notes could be classed as accommodation paper, it would seem to be clear the other could also. If it be considered that the verdict for the defendant in the Bechtel case was based on this third plea, the complainant here would be estopped by that verdict from contending the contrary on what amounts to the same issue in the case at bar.

Subsequent to the filing of these first three pleas, in the Bechtel case, the defendant filed four additional pleas. In the first of these he alleged that the sole consideration for the execution of the Bechtel note "was a supposed and pretended indebtedness of the defendant on open account" to the Illinois Company in the sum of $38,969.21. The plea then went on to allege certain facts regarding the debits and credits entering into that account and then alleged that the defendant, being mistaken as to the account and the items therein which had been charged against him, executed the note sued upon. The second additional plea filed by the defendant in the Bechtel case was to the same effect but included certain allegations as to certain credits which the defendant supposed had been included in his account with the Illinois Company but which, in fact, were not included. This plea then went on to recite that at the same time the defendant executed the Bechtel note there being sued upon, he also executed the Mooney note, being sued upon in the case at bar, which note was alleged to be then outstanding and in the possession of Mooney. The third additional plea was a combination of the two preceding pleas except that no mention was made of the Mooney note. The fourth additional plea was similar to the third except that it did not refer to specific items of debits and claimed credits but merely alleged generally that through the erroneous conviction of both Marshall and Bechtel and the Illinois Company that it was proper so to do, many items had been improperly charged to the defendant in his account with the company and many items of credit, to which he was entitled, had been omitted and, had they been included, the account would not have shown any indebtedness to the Illinois Company on the part of Marshall beyond the sum of $5 and, being so mistaken, the defendant signed and delivered the note there sued upon.

The substance of each one of the foregoing additional pleas filed in the Bechtel case is to be found among the pleas filed in the case at bar. So that no matter which of the pleas in the Bechtel case, the verdict finding the issues in that case for the defendant, may be considered as having been based upon, the complainant here is precluded by the judgment in that case from a recovery against the defendant in the case at bar, because all the issues involved in those pleas are also presented here and a finding for the defendant on the issues involved in any of them would entitle the defendant to a judgment. In this respect, the case at bar may be distinguished from all the cases relied upon by the complainant. We need not refer to them specifically here. The following case is typical. In *People v. Wyanet Elec. Light Co.*, 306 Ill. 377, which was a proceeding by a county collector for judgment and order of sale for taxes for the year 1920, the company objected to the entry of judgment on the ground (1) that its capital stock was not assessable by the tax commission; and (2) that the county collector had made a similar application in the previous year involving the taxes for the year 1919, and that the company objected for the same reason, namely, that its capital stock was not assessable by the tax commission and that judgment for the amount of the 1919 tax was there denied. The court held that the doctrine of estoppel by verdict or *res judicata* there invoked could not be applied, for it was pointed out that the record of the former case showed that while the company there interposed the objection set out in paragraph (1) above, it also interposed another objection in that case which was in substance that the tax against the company's capital stock had been fixed by the State Board of Equalization, without notice to it, and that no hearing had been granted to it in the matter. It was pointed out by the court in this connection that in the former

case there was merely a general finding for the defendant but no specific finding of fact had been made, to the effect that its capital stock was not assessable by the tax commission and that "there is no specific finding of any fact in that record that is a material and controlling fact in that record and also in this record. * * * It is absolutely necessary in order that a former judgment should operate as an estoppel by verdict, that there shall have been a finding of a specific fact in such former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on this point by reason of the fact that more than one distinct issue of fact is presented to the court, the estoppel will not be applied, and for the reason that the court may have decided it upon one of the other issues of fact."

The distinction between the case referred to and the case at bar is apparent. It may well have been that in the case referred to the finding for the company in the case involving the 1919 taxes was on the basis of the second point urged in the former proceedings which raised a question that was not involved in any way in the later case brought to recover the taxes for 1920. In the case at bar we have a very different situation presented. A finding for the defendant on the issues presented by any one of the pleas interposed in the Bechtel case was sufficient to warrant the general verdict for the defendant there returned. The issues presented by each of those pleas are also interposed by the defendant in the case at bar. The two notes involved in the two cases, in our opinion, rest upon the same consideration. A finding on any one of the issues involved in the several pleas

in the Bechtel case would also be material and controlling in the case at bar. In that state of facts the doctrine of estoppel by verdict may be applied. We are, therefore, of the opinion that the chancellor erred in deciding issues which were made up on the cross-bill in favor of the cross defendant and in dismissing the cross-bill for want of equity.

Turning now to the issues involved in the main case, which were heard by the master: After a careful consideration of all the evidence we have reached the conclusion that the Mooney note here sued upon was without consideration. This note together with the Bechtel note, was given by Marshall, as testified by Gordon, "in settlement of your (Marshall's) account"; and as Gordon further put it, on cross-examination, in settlement of "his (Marshall's) account that he was owing to the Lake Tanning Company" (the Illinois Company) "which," Gordon added, "was assumed by Mr. James E. Mooney and Mr. Bechtel, as shown by the books." Further, Gordon testified that the account of Marshall to which he referred was his account "according to the books of the Lake Tanning Company of Illinois"; that he showed that account to Marshall "many times," one of which was when he signed the notes. He then identified the credit item shown on Marshall's account with the Illinois Company on that company's ledger, under date of May 1, 1908, reading: "By sundries $38,969.21" and testified, "there is the credit which closed his account." So, in our opinion, the sole consideration for these notes was the supposed indebtedness of Marshall to the Illinois Company as evidenced by the debit balance shown on his account with that company as of May 1, 1908. The charges against Marshall in that account were made up of three kinds: the share of the business losses of both the Illinois Company up to June 1, 1907, and of the Ohio Company after that date, which had annually

been charged off from the profit and loss accounts of those companies, and against Marshall, other shares having been charged against the other two stockholders, Mooney and Bechtel; a charge for an alleged unpaid stock subscription, amounting to $8,300; and interest charges on those two matters.

The master specifically found that Marshall was not legally liable for the business losses of the Illinois Company and that "undoubtedly he was not liable legally for" the "further business losses of the old (new) Lake Tanning Company." The latter item was one of $26,492.92 representing one-third of the business losses of the Ohio or new company for the period from June 1, 1907, to May 1, 1908. No objections were interposed to the master's report by complainant, by reason of those findings.

The item of $8,300, with interest thereon, arose in the following way: Originally, only $75,000 of the authorized capital stock of the Illinois Company, amounting to $100,000, was issued,—Mooney, Bechtel and Marshall each taking one-third of it. In June, 1900, Gordon, Mooney's private secretary and personal representative, who came up to Chicago about June first each year to post and close the books of the Illinois Company for the year ending at that time, credited the capital stock account of the company with the remaining amount of the stock, $25,000, and charged one-third of the same each to Mooney, Bechtel and Marshall. To this Marshall protested. On this point Marshall testified he told Gordon "that I refused to increase my holdings in the company under any circumstances and objected to any entries on the books that involved me in any way in the increase of capital stock. Mr. Gordon told me that the American Oak would take the increase so far as my interest went,—would take this increase that was allotted to me. * * * Mr. Gordon said that was Mr. Mooney's way of fixing things,—the way they

wanted it done." That testimony was not denied. The "American Oak" referred to was the American Oak Leather Company, of which Mooney was president and Henry H. Bechtel, vice president. Marshall's testimony in this regard is borne out by the entries on the books. Under date of June 29, 1900, Marshall's capital stock account in the ledger of the Illinois Company is charged with an item, reading "to capital stock $8,300" and it is credited, under the same date, with an item reading "by Am. Oak Leath. $8,300." Both these items refer to "Journal page 110" and there we find items showing that these 250 shares of stock were charged as follows: 84 shares to Mooney; 83 shares to Henry H. Bechtel and 83 shares to Marshall. The next item reads: "Am. Oak Leather Co., Chicago, George A. Marshall, Bal. his a/c carried by A. O. L. Co. for Geo. A. Marshall $8,300." This item refers to page 175 in the ledger containing the account of "American Oak Leather Co. City" with the Illinois Company, which account is charged under date of June 29, 1900, with an item reading "To Geo. A. Marshall $8,300." So far as the books show, nothing further was done concerning this additional stock transaction, so far as Marshall was concerned, until six months after the Illinois Company ceased doing business, namely, in December, 1907. Certain entries were then made in the books which, according to the testimony of the witnesses, Phelan and Mellor, were made at the direction of Gordon, representing Mooney. The journal shows an entry under date of December 31, 1907, showing a debit to Marshall of $12,697.36, which is the $8,300 stock item with interest to that date, and another entry, under the same date, showing a credit to "Am. O. Lea. Co. City," in the same amount. Marshall's personal account in the Illinois Company ledger shows this debit charge under date of December 31, 1907, reading: "To Am. O. L. Co. City $12,697.36," and

under the same date the account of the "American Oak Leather Co. City" in the Illinois Company ledger shows a credit item reading, "By G. A. Marshall, $12,697.36." Thus, this item came to be a part of Marshall's debit balance, as shown by his ledger account in May, 1908. Marshall had charge of the keeping of the books of the Illinois Company prior to June, 1907, but not thereafter and when the entries of December, 1907, were made in the books by Phelan at Gordon's direction, representing Mooney, it is not shown that Marshall agreed to them or even knew about them.

In our opinion there was nothing in Marshall's debit balance in his account with the Illinois Company, at the time these notes were given to "settle" that balance, showing any legal liability on his part or any consideration to him. How the fact that, instead of having Marshall give a note to the order of the Illinois Company for his debit balance, Gordon had him sign two notes one to Mooney's order and the other to Henry H. Bechtel's for amounts equaling the credit balances in their accounts with the company, and the further fact that Mooney and Bechtel, instead of receiving company obligations in payment of their balances, were willing to take Marshall's notes, can have the effect of innoculating the latter with a valuable consideration, when the record clearly shows that the notes, according to Gordon, whom the master says he believes, were given by Marshall in settlement of his account with the company, we are unable to see.

Furthermore, Marshall testified that he considered that he "gave this (Mooney) note as an accommodation paper to them to enable the corporation to go through"; that when Gordon presented the two notes to him he refused to sign them, claiming he was not, in fact, indebted to the Illinois Company as his account purported to show. He also testified that Gor-

don assured him the notes would be safe in the hands of Mooney and Bechtel and he would never be called upon to pay them and that he then said if that were the case he would sign them, and he did. Phelan, a bookkeeper employed by Gordon to keep the books of the Ohio Company, testified that he heard this conversation between Gordon and Marshall; that as near as he could recall Gordon's words to Marshall they were: "George, the only way for me to wind up this matter is for you to sign these notes," and that Marshall replied to this by saying, "Charley, I don't owe this money, and I should not sign these notes," and that Gordon replied to that by saying, "George, you have everything to gain and nothing to lose by signing the notes, as you will never be called upon to pay this money. If you sign the notes, you still have your job; if you don't sign the notes, you will be out of a job;" and that finally the notes were signed.

The master stated in his report that he "cannot and does not believe Marshall's explanation that the notes were 'accommodation' notes." But the master explains in the following paragraph of his report that "there was nothing in the appearance of either Marshall or Phelan on the witness stand to cause the master to make the findings as to their credibility hereinabove set forth, but such findings are based on all the testimony and evidence shown in the record before the master and his conclusions therefrom." The master stated elsewhere in his report that he believed the testimony of Gordon, as to what occurred when these notes were signed, to be true. We have difficulty in appreciating any substantial difference between the witnesses in that regard. According to the testimony of Gordon himself, Marshall claimed in substance, when these notes were presented to him for his signature, that he did not owe the company anything and he at first declined to sign the notes.

Gordon testified that Marshall then walked out into the tannery and after a while returned and Gordon then said to him, ''Why don't you want to sign them?'' and Marshall replied, ''The first thing I know they will be hopping me for payment,'' to which Gordon testified he replied, ''Mr. Mooney will never bother you. Take my word for it.'' Gordon testified further that Marshall hesitated ''maybe five minutes'' longer and then took up a pen and signed the notes, saying: ''I will never pay them,'' to which Gordon says he replied, ''I don't give a damn whether you pay them or not'' and that this ended the interview.

Here we have the testimony of Mooney's private secretary and personal representative, sent to Chicago from Cincinnati by Mooney to close up the books of the Illinois Company, whose version of this matter the master says he believes, testifying in effect that Marshall denied owing the Illinois Company any money and refused to sign these notes and that he (Gordon) assured him that he would never have to pay them,—that ''Mr. Mooney will never bother you. Take my word for it,'' and after that assurance that Marshall signed these two notes. And the record shows that Gordon's word has been good, so far as Mooney is concerned, for Mooney never did bother Marshall on his note. Again, turning to the testimony of Gordon, we find that he testified (by deposition taken at Cincinnati in March, 1919) that Mooney was 87 years old in May, 1919; that at the time he was testifying he was in daily contact with Mooney; that the latter came to the office nearly every day but ''he only thinks he transacts business. * * * He has practically been unable to transact business on his own responsibility for three years''; that he saw Mooney hand over the Mooney note to John A. Bechtel (according to the affidavit of claim, on June 16, 1916); that at that time Bechtel paid nothing to Mooney in connection with the transaction; that he

(Gordon), at the time Mooney turned this note over to Bechtel, charged the amount of it on Mooney's books to profit and loss; that Mooney told Gordon why he was turning the note over to Bechtel and Gordon wrote that explanation down in Mooney's books and the latter signed it; and that Mooney told him (Gordon) at this time that he had told Henry H. Bechtel, before his death, that he was going to give this note to him and that if he could get anything out of it he could keep it, but Bechtel died and he had then told the same thing to Bechtel's son. Gordon was then asked whether he said anything to Mooney upon that occasion and he replied, "I did not say anything, but I thought a whole lot." He was then asked what John A. Bechtel said, and he replied, "John Bechtel said 'Thank you,' and put it in his pocket and went off."

Although this note was given in May, 1908, it was dated February 1, 1908, and the interest was computed to that date. On its face it was due "one day after date." This note was overdue when it was handed to Gordon, representing Mooney, who received it for the latter with assurance to Marshall that the latter would not be expected to pay it,—that Mooney would never bother him about it,—after Marshall had signed it protesting that he owed the company nothing and would never pay the note, and according to the testimony of several witnesses, after Gordon had explained that this was the only way to close up the Illinois company accounts. In our opinion the note was without consideration and given with full notice of that fact to Gordon, which means to Mooney, and even if it were true that some consideration moved from Mooney to the Illinois Company, as evidenced by the entries in his account with that company, and Mooney took the note in lieu of his credit balance in that account, such consideration may not be applied to Marshall, who gave the note

solely in settlement of his debit balance with the Illinois Company. John A. Bechtel is, of course, in no better position than Mooney would have been in, so far as any right of recovery against Marshall is concerned. We are, therefore, of the opinion, on the issues involved in the main case, that the conclusions of the master were not warranted by the evidence and the trial court erred in entering a decree requiring the defendant to pay the note.

For the reasons given the decree of the circuit court is reversed.

*Decree reversed.*

O'Connor, P. J., and Taylor, J., concur.